## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DIEGO H.,**[1]

        **Plaintiff,**

                                **Case No. 2:23-cv-3870**

    **v.**                          **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Diego H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 3, 2021, Plaintiff filed his application for benefits, alleging that he has been disabled since October 17, 2019. R. 71, 90, 175–81. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 115–19, 122–26. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 144–62. ALJ Beth Shillin held a hearing on March 22, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 37–70. In a decision dated April 13, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 17, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–32. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 16, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 1, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On June 12, 2024, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision
> is supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025. R. 23. He was 42 years old on October 17, 2019, his alleged disability onset date. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 23.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post-laminectomy at L5-S1; anxiety; depression; and plantar fasciitis on the left. *Id.*  The ALJ also found that Plaintiff's history of grand mal seizures and obesity were not severe. R. 23–24.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–26.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 26–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a shipper and receiver, lead worker; janitor; and maintenance worker. R. 30.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, approximately 8,000 jobs as an electronic component inspector; approximately 7,000 jobs as an electric and electronic bonder; and approximately 9,000 jobs as a medical device assembler—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 30–31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 17, 2019, his alleged

disability onset date, through the date of the decision. R. 31–32.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 6. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 10.

## IV.    DISCUSSION

### A.    The RFC and Plaintiff's Subjective Statements

The ALJ determined that Plaintiff had the RFC for a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the following residual functional capacity: The claimant can perform sedentary work with the following limitations: The claimant may ambulate with a cane. The claimant cannot climb ladders, scaffolds, or ropes, and cannot work around heavy machinery or heights. The claimant can occasionally climb stairs and ramps and can perform occasional crouching, crawling, stooping, kneeling, and balancing. The claimant can perform simple, repetitive, and routine tasks. The claimant needs the option to sit or stand at will in the workstation while remaining on task. The claimant is able to shift positions every 15 to 30 minutes.

R. 26. A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see*

*also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Plaintiff argues that, in crafting this RFC, the ALJ failed to properly evaluate Plaintiff's subjective complaints and statements.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to

9

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

In crafting Plaintiff's RFC, the ALJ specifically considered Plaintiff's subjective complaints, R. 27–29. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 27 (stating further that Plaintiff's "allegations of total disability are inconsistent with the overall record" and that "normal movement of all extremities and normal strength, tone, and sensation" in June 2021 "would be inconsistent with disabling pain and limitation"). While the ALJ found

that "[r]adiologic testing does support the claimant's allegations of chronic back pain and radiculopathy[,]" *id*., she noted Plaintiff's generally benign physical examination findings, including, *inter alia*, intact sensation, normal tone, full or nearly full lower extremity strength, normal reflexes, and normal gait and station as well Plaintiff's reports to the consultative examiner in May 2021 that he "spends time playing with his children, tending to his aquarium, occasionally preparing simple meals, and helping out with the household chores to the best of his ability[.]" R. 27–28. The ALJ went on to consider Plaintiff's activities and treatment history:

> The claimant stated that he continues to have pain and that he remains on opioid medications. Despite his complaints of pain, he is going up and down the stairs; helping his wife a bit around the house; driving his son to and from school; *going to the park and playing ball with his son*; and going to church. He is able to watch TV, take care of his aquarium, use the Internet, and interact with others. I am finding that the claimant can do sedentary work with postural limitations, which adequately accounts for these limitations. The claimant has reported depression and anxiety, but has not had mental health treatment. Progress notes from September 1, 2020 and June 22, 2021 note mild depression and anxiety (Exhibit 7F, pp. 11, 17, and 29). Arguably, the claimant does not really have any mental issues, but I am putting him at simple, repetitive, and routine tasks due to the fact that pain might interrupt his concentration to a certain extent. *I note that the claimant continues to take a lot of opioid medication, but it does not seem that he tried many alternative methods of pain control, since there is no mention of his ever having tried PT or anything other than surgery and opiates.* The claimant's seizure disorder appears to be controlled with medication and his obesity has no more than a minimal effect on his ability to perform basic work activities, even when considered in combination with his other impairments. In conclusion, I do not find the claimant disabled, as there is clearly work that he can do at the sedentary level, given his activities.

R. 28 (emphasis added). In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; ." *Ruggiers v. Saul*, No. 4:19-CV-1633, 2020 WL 4447927, at *6 (M.D. Pa. Aug. 3, 2020) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)) ("[T]he fact that Plaintiff continued to experience pain . . . does not, alone, demonstrate that she could not perform the work as

identified in the RFC. It is well-settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled."); *Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition that '[a]lthough 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them,' particularly where such statements are undermined by evidence of a more active lifestyle.") (quoting *Chandler,* 667 F.3d at 363).

Plaintiff also contends that the ALJ should have accorded "substantial credibility" to Plaintiff's subjective complaints because of a "good work record[.]" *Plaintiff's Brief*, ECF No. 6, p. 15. This Court disagrees. The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. R. 27–29. Moreover, even though the ALJ did not expressly discuss Plaintiff's work history when assessing Plaintiff's subjective statements, the ALJ specifically referred to Plaintiff's work history when concluding that he was incapable of performing his past relevant work as a shipper and receiver lead worker, a janitor, and a maintenance worker. R. 30; *cf. Burrell v. Kijakazi*, No. CV 21-3662,

2022 WL 742841, at *4 (E.D. Pa. Mar. 10, 2022) (finding that, although "the ALJ did not

mention Plaintiff's work history in her credibility assessment, she explicitly referenced Plaintiff's

work history in her factual findings and when determining if jobs existed in the national

economy that Plaintiff could perform" and that "even if the ALJ failed to consider Plaintiff's

work history, such failure does not constitute reversible error because the ALJ articulated how

she reached her decision based on the evidence in the record"); *Forcinito v. Comm'r of Soc. Sec.*,

No. CIV. 12-6940 JBS, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) (rejecting the plaintiff's

argument that the ALJ failed to consider her work history where "the ALJ did consider Plaintiff's

work history by acknowledging her past relevant work as a cook" and that "work history is only

one of many factors the ALJ may consider in assessing claimant's credibility" but that "[w]ork

history is not dispositive of credibility and the question of credibility is left to the ALJ's

discretion after considering all of the relevant factors").

        Plaintiff also points to record evidence, including his subjective complaints, diagnostic

tests, past surgeries, and other forms of treatment as a basis for remand. *Plaintiff's Brief*, ECF

No. 6, pp. 16–17. However, the ALJ considered most, if not all, of this evidence. R. 26–30. To

the extent that Plaintiff insists that this evidence establishes that the ALJ erred in her

consideration of Plaintiff's subjective statements, his argument boils down to nothing more than

a disagreement with the ALJ's decision, which the Court has already explained is supported by

substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003)

("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision,

which is soundly supported by substantial evidence."). Notably, even if Plaintiff points to

evidence that he believes undermines the ALJ's evaluation, so long as the ALJ satisfies the

substantial evidence standard, the Court will uphold the ALJ's decision even if contrary evidence

13

exists that could justify the opposite conclusion. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff complains that, in noting that Plaintiff relies on opioid medications, the ALJ "puzzlingly" referred to a failure on Plaintiff's part to consider alternative methods of pain control without identifying such methods. *Plaintiff's Brief*, ECF No. 6, pp. 17–18. The Court is not persuaded that this issue requires remand. As noted above, an ALJ may consider a claimant's treatment when evaluating the claimant's subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3)(v). Here, the ALJ noted that it did not appear that Plaintiff had tried other treatment modalities, including physical therapy. R. 28. Moreover, the ALJ did not completely discount Plaintiff's subjective complaints; instead, she explained how she fashioned an RFC that took into consideration Plaintiff's subjective complaints as well as other record evidence. R. 28 (explaining that "[t]he sedentary RFC found in this decision would account for any limitations related to the claimant's plantar fasciitis, even when considered in combination with his other impairments" and that "[a]rguably, the claimant does not really have any mental issues, but I am putting him at simple, repetitive, and routine tasks due to the fact that pain might interrupt his

14

concentration to a certain extent"), 29 (finding that "given the claimant's reported back pain and the use of a cane as testified to, I find that the [state agency opine] limitation to light exertional work is not in line with his physical complaints and limit him to sedentary exertional work" and finding that Plaintiff "has greater exertional limitations" than opined by the medical state agency consultants); *see also Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016) ("The claimant need not be pain-free to be found 'not disabled.'"). In any event, as detailed above, this was but one of the many factors that the ALJ considered when finding that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the record evidence.

Plaintiff also challenges the ALJ's consideration of Plaintiff's daily activities. *Plaintiff's Brief*, ECF No. 6, pp. 18–19. Plaintiff first argues that the ALJ failed to explain "how the performance of these activities belie[s] [his] allegations of chronic pain or demonstrate[s] the ability to meet the demands of sedentary work." *Id*. at 18. However, an ALJ may consider a claimant's daily activities when assessing that claimant's subjective complaints and testimony. 20 C.F.R. § 404.1529(c)(3)(i); *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual

functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted). As detailed above, the ALJ expressly considered Plaintiff's activities—which included, *inter alia*, going up and down the stairs, helping his wife around the house, driving his son to and from school, going to the park and playing ball with his son, going to church, and taking care of his aquarium—and implicitly found that these activities undermined Plaintiff's allegations of total disability. R. 26–29; *see also* SSR 16-3p, 2017 WL 5180304, at *9 (stating that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"). Moreover, and as previously noted, the ALJ did not completely discount Plaintiff's allegations of pain, but instead explained how she modified Plaintiff's RFC to account for his pain. R. 27–29. Accordingly, Plaintiff has not shown that the ALJ erred in this regard.

Plaintiff next contends that the ALJ mischaracterized the hearing testimony when she stated that Plaintiff's activities included going to the park and playing ball with his son. *Plaintiff's Brief* ECF No. 6, pp. 18–19 (citing R. 53). According to Plaintiff, he never testified that he threw a ball with his son at the park and the ALJ's claim that Plaintiff "was regularly throwing a ball with his son" is a mischaracterization that requires remand. *Id*. at 19. This Court disagrees.

At the administrative hearing, the ALJ questioned Plaintiff regarding his ability to play with his son:

> Q What about, *do you ever take your son to the park, you <u>ever throw a ball with him</u>*, ever do any of that sort of thing?

A *As a parent, <u>I have to do it</u>*. You know, what I sacrifice and what I'm going through, I have to do it, you know, and take it with me without taking my pills. I function, I do everything with my son, with my daughter. []I am the one who is taking the pain medication. Without that, I'm a vegetable at times. *You know, so, there's times that, with pain and all, <u>I have to do it</u>, I'm a dad*. If he tells me to pick him up, I, you know, I can't say no to my son if like, you know, mom says, hey mom please pick me up.

Q When you say pick him up, do you mean lift him in the air?

A No, I mean like, you know, when I get motivation, you know, and I can do this and do that. You know, like, a pick me up.

Q I'm sorry, I'm not understanding completely. So you basically, some things to do with your son, as a dad, you want to still, you obviously want to interact with him and do things with him.

A Of course, yes, yes.

Q And do you sit on the floor and play games with him or do that kind of thing?

A No, ma'am, I cannot get in the floor. It's just very, very tough.

Q All right, okay. Now, but *you do <u>take him to the park</u> or do some of that stuff with him*, is that correct?

A My wife takes him -- we all go to the park. *We all go to the park and <u>when I'm not able to continue</u>*, I'll sit in the car and my wife continues with them.

R. 52–53 (emphasis added). A fair reading of this testimony persuades this Court that the ALJ reasonably found that Plaintiff's activities included taking his son to the park and throwing a ball with his son. R. 52 ("As a parent, I have to do it [take his son to the park; throw ball with his son]."), 53 (conceding that he goes to the park and engages in some activity with his son but stating further that "when I'm not able to continue" that activity, "I'll sit in the car").[4] In short, the ALJ did not mischaracterize Plaintiff's testimony in this regard.

　　For all these reasons, the Court concludes that the ALJ sufficiently explained her

---

[4] Contrary to Plaintiff's representation, *Plaintiff's Brief*, ECF No. 6, p. 19, the ALJ never stated that Plaintiff "regularly" throws a ball with his son. R. 28.

reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).

### B.    Step Five Determination

Plaintiff next argues that, at step five of the sequential evaluation, the ALJ failed to identify a significant number of jobs that he could perform. *Plaintiff's Brief*, ECF No. 6, pp. 19–20. Plaintiff specifically contends that "there is reason to doubt that these jobs [identified by the vocational expert] exist in significant numbers" because "[a]ccording to Skilltran Job Brow[s]er Pro, a recognized aggregator of Bureau of Labor Statistics, there are only 1,165 Electronic Component Inspectors, 13 Electric and Electronic Bonders, and 50 Medical Device Assembler jobs nationwide in 2023." *Id*. at 19 (citing Exhibit A (copy of SkillTRAN Report), attached thereto). Plaintiff further argues that this total of 1,228 jobs nationwide is not a significant number of jobs sufficient to meet the Commissioner's burden at step five of the sequential evaluation process. *Id*. at 20 (collecting out-of-circuit cases). For the reasons that follow, Plaintiff's arguments are not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess*, 931 F.3d at 201; *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford*, 399 F.3d at

551). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT [Dictionary of Occupational Titles,]"[5] *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)), but vocational experts may also "rely on their experiences rather than solely on the DOT[.]" *Butler v. Colvin*, No. CIV. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015). "[T]he Code of Federal Regulations specifically lists the DOT as a source of 'reliable job information[.]'" *Hearn v. Comm'r of Soc. Sec.*, No. CV 18-10538, 2019 WL 2710790, at *7 (D.N.J. June 27, 2019) (quoting 20 C.F.R. § 404.1566(d)); *see also Rush v. Berryhill*, Civ. No. 17-939, 2018 WL 4257930, at *1 n.1 (W.D. Pa. Sept. 6, 2018) ("[C]ourts in the Third Circuit that have addressed the matter have continued to find the DOT to be an appropriate source of occupational information and have declined to require ALJs and VEs to consult other sources in addition to the DOT.") (citations omitted); *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 1:16-CV-05691-NLH, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017) ("It is not for this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC."); *Sanabria v. Comm'r of Soc. Sec.*, No. 2:15-CV-8963, 2017 WL 436253, at *4 (D.N.J. Jan. 31, 2017) ("Although Plaintiff may disagree with the

---

[5] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

19

relevance of the Dictionary of Occupational Titles ("DOT") in the modern-day work force, 'the DOT remains an appropriate source of occupational data.'")  (quoting *Coates v. Colvin*, No. CIVA. 14-0265, 2014 WL 4792199, at *4 (W.D. Pa. Sept. 24, 2014)). Finally, before relying on vocational expert testimony, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles[.]" SSR 00-4p, 2000 WL 1898704, at *1.

A vocational expert testified at the administrative hearing in this matter. R. 64–69. The ALJ asked the vocational expert whether an individual with Plaintiff's vocational profile and the RFC found by the ALJ could perform any work in the national economy. R. 26, 66. In response, the vocational expert testified that such an individual could do so, and identified the jobs of electronics component inspector, DOT 726.684-110 (sedentary, unskilled, SVP 2, with 8,000 jobs in the national economy), electric and electronic bonder, DOT 726.685-066 (sedentary, unskilled, SVP 2, with 7,000 in the national economy), and medical device assembler, DOT 712.687-034 (sedentary, unskilled, SVP 2, with 9,000 jobs in the national economy). R. 66–67. Then, in response to inquiry by the ALJ, the vocational expert also confirmed that this testimony was consistent with the DOT. R. 69 (clarifying that, to the extent that the DOT did not address other limitations posed by the ALJ, the expert relied on her education, training, experience, and data from the Department of Labor). Although the ALJ offered Plaintiff's counsel the opportunity to question the vocational expert, his counsel declined to do so. *Id*.

In her written decision, the ALJ relied on the vocational expert's testimony to find, at step five, that there exist in the national economy a significant number of jobs that Plaintiff could perform despite his lessened capacity—*i.e.*, approximately 8,000 jobs as electronics component inspector; approximately 7,000 jobs as an electric and electronic bonder; and approximately

9,000 jobs as a medical device assembler. R. 30–31. The ALJ therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. R. 31–32.

While Plaintiff now challenges the ALJ's step five finding and her reliance on the vocational expert's testimony, *Plaintiff's Brief*, ECF No. 6, pp. 19–20, Plaintiff raised no objection to the vocational expert's qualifications or testimony at the administrative hearing. R. 64–69. Indeed, Plaintiff's counsel posed no questions whatsoever to the vocational expert. *Id*. Plaintiff's current step five challenge therefore comes too late. *See Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec*., No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect.... Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted).

In any event, Plaintiff's challenge is not meritorious. This Court has already explained that courts in this circuit—including this Court—have found that the DOT is a reliable source of job information. *See Hearn*, 2019 WL 2710790, at *7; *Rush*, 2018 WL 4257930, at *1 n.1; *Jean-Pierre*, 2017 WL 4316880, at *9; *Sanabria*, 2017 WL 436253, at *4. "Given that '[a] vocational expert may rely on the DOT, and the ALJ may rely on the [vocational expert's] testimony to the extent it is consistent with the DOT,' Plaintiff's argument fails." *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 497–98 (D.N.J. 2022) (rejecting the claimant's argument that, despite the vocational expert's testimony that there were approximately 300,000 relevant jobs according to

the DOT, there were only 19,710 such jobs in the national economy according to "Job Browser

Pro DOT") (quoting *Sanabria*, 2017 WL 436253, at \*4) (cleaned up).

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 23, 2025                          _____*s/Norah McCann King*_____
                                             NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE